UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MYLON S BETTS,

    Plaintiff,

    v.

JEFF WELLS, et al.,

    Defendants.

Case No. 1:23-CV-408-CCB

## OPINION AND ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff

Mylon Betts and Defendants City of Marion, Indiana; Jason Konazeski; Jerry Foustnight;

Britan Crist; Matthew Moore; Tom Hunt; Captain Jeff Wells; and Officer Melton. (ECF

61; ECF 67; ECF 69). The Court also addresses Mr. Betts's Petition for Damages for Civil

Rights Violation (ECF 77) and Defendants' Motion to Strike that petition (ECF 79) in this

order. For the reasons below, the Court denies Mr. Betts's motion for summary

judgment, grants Defendants' motion for summary judgment, and strikes Mr. Betts's

petition.

## I.   RELEVANT BACKGROUND

This is a case about the towing of four vehicles from Mr. Betts's property by

Code Enforcement Officers of the City of Marion. The Court will begin by summarizing

the undisputed facts.

Mr. Betts has rented a property at 615 South Adams Street in Marion, Indiana, since 2017. (ECF 70-1 at 12:2–20). In June through August 2023, Mr. Betts was living and operating an events center on the property. (*Id.* at 12:9–10; 17:12–17).

In June 2023, Mr. Betts kept four vehicles in parking spaces adjacent to 615 South Adams Street: a 2000 Chevy Cavalier, a 2007 Lincoln Navigator, a 1998 GMC Sonoma, and a 1998 Cadillac DeVille. (ECF 70-1 at 61:11–23; ECF 70-3 at 14–19). Each of these vehicles was more than three model years old. (ECF 70-3 at 14–19). Mr. Betts was cited by the City of Marion on June 14, 2023, for keeping the vehicles in the parking spaces while mechanically inoperable. (ECF 70-2 ¶ 5; ECF 70-3 at 14–19).

On August 17, 2023, City of Marion Supervising Code Enforcement Officer Jason Konazeski and Code Enforcement Officers Britan Crist and Matt Moore arrived at Mr. Betts's property to tow the vehicles. (ECF 25 Officer Crist Body Camera Video at 1:06). Marion Police Officer Greg Melton arrived shortly after. (ECF 25 Officer Melton Body Camera Video at 00:25). Mr. Konazeski informed Officer Melton that Betts had received notices to remove or repair the four vehicles. (*Id.* at 00:26). Rather than removing or repairing the vehicles, Mr. Betts covered them with tarp. (*Id.* at 00:28). Mr. Konazeski told Officer Melton that he had spoken with "Judge Hunt" and received permission to tow the vehicles if they were still in violation. (*Id.* at 00:32). Officer Melton knew that Mr. Konazeski was referring not to a current judge but to former judge and now-City Attorney Tom Hunt when he used the name "Judge Hunt." (ECF 70-6 ¶ 3). Mr. Konazeski never stated that he had a warrant to tow the vehicles. (ECF 25 Officer

2

Melton Body Camera Video at 00:32–00:38). Officer Melton informed Mr. Betts that they would be towing the vehicles. (ECF 25 Officer Melton Body Camera Video at 00:42). Mr. Betts asked if he would be arrested if he interfered with the towing. (*Id.* at 1:07). Officer Melton responded, "Absolutely." (*Id.* at 1:11).

After some extended argument between Mr. Betts, the Code Enforcement Officers, and Officer Melton, Marion Police Captain Jeffrey Wells arrived along with a tow truck. (*Id.* at 6:12). All four vehicles were then towed. (*Id.* at 8:30–50:00).

In reaction to this towing, Mr. Betts filed this lawsuit on September 22, 2023. (ECF 1). The Court sua sponte denied several of Mr. Betts's claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and granted him leave to proceed in forma pauperis. (ECF 7). Shortly after the screening order was filed, Mr. Betts filed an amended complaint. (ECF 8).

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving

party and drawing all reasonable inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano,* 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers,* 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

### III. ANALYSIS

Only the claims pled in Mr. Betts's amended complaint are properly before the Court. *See Chasensky v. Walker,* 740 F.3d 1088, 1094 (7th Cir. 2014) (noting that an amended complaint "wipes away" prior pleadings (internal quotation omitted)). The

amended complaint is brief, and it is difficult at times to discern what claims Mr. Betts is raising. Bearing in mind its obligation to "liberal[ly] constru[e]" Mr. Betts's filings, *Ebmeyer v. Brock*, 11 F.4th 537, 542 n.4 (7th Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court identifies four claims in Mr. Betts's amended complaint: (1) a Fourth Amendment claim under 42 U.S.C. § 1983 against all defendants for the search of Mr. Betts's property without a warrant, (2) a Fourth Amendment claim under 42 U.S.C. § 1983 against all defendants for the seizure of Mr. Betts's four vehicles, (3) a First Amendment claim under 42 U.S.C. § 1983 against Jason Konazeski for towing Mr. Betts's vehicles in retaliation against Mr. Betts for engaging in protected speech, and (4) a state-law claim under the Indiana constitution against all defendants for the search and seizure of Mr. Betts's property.

Mr. Betts filed a motion purporting to seek partial summary judgment and declaratory relief on July 30, 2025.[1] (ECF 61). The title of that motion, though, is misleading. In the body of his motion, Mr. Betts seeks summary judgment "on all claims of constitutional and statutory violations" as well as declaratory relief, injunctive relief, compensatory and punitive damages, and attorneys' costs and fees. (ECF 61 at 6, 8). Accordingly, the Court construes his motion as a motion for summary judgment on all claims.

---

[1] Mr. Betts also filed a duplicate of this motion on August 4, 2025. (ECF 67). Because this motion is identical to his July 30, 2025, motion, the Court resolves both on the same grounds.

Mr. Betts also appears to raise a standalone due process claim under the Fifth and Fourteenth Amendments in his motion for summary judgment. (*See* ECF 61 at 2–5). But summary judgment is generally far too "late in the day to be adding new claims." *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997). Though recent Seventh Circuit cases have cracked the door for district courts to permit constructive amendment of complaints at summary judgment, courts are not required to permit such constructive amendments; in fact, it is "rarely" appropriate to do so. *Ollison v. Gossett*, 136 F.4th 729, 740 (7th Cir. 2025) (quoting *Schmees v. HC1.COM, Inc.* 77 F.4th 483, 490 (7th Cir. 2023)). And the slightly-more-permissive standard set forth in these cases was crafted for parties attempting to survive summary judgment, not those seeking its grant. *See Ollison*, 136 F.4th at 739–40. The Court declines to permit Mr. Betts to constructively amend his complaint in his motion for summary judgment.

Defendants responded in opposition to Mr. Betts's motion for summary judgment on August 27, 2025, and cross-moved for summary judgment on all claims on the same date. (ECF 69; ECF 72). Mr. Betts filed a document raising concerns about service of Defendants' motion for summary judgment and alleging misconduct during discovery on January 8, 2026. (ECF 75). Defendants treated this motion as Mr. Betts's response to their motion for summary judgment and replied to it on January 22, 2026. (ECF 76). The Court will address the cross motions for summary judgment separately.

### a. Mr. Betts's Motion for Summary Judgment

Mr. Betts failed to file a standalone statement of material facts to support his cross motion as required by the Local Rules of this district. Instead, he interspersed factual allegations throughout his brief. As a pro se litigant, Mr. Betts is entitled to "liberal constru[ction]" of his filings. *Ebmeyer v. Brock*, 11 F.4th 537, 542 n.4 (7th Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But his pro se status does not release him from "compliance with procedural rules." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *see also Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."). Local Rule 56-1 requires that a summary judgment movant separately file a statement of material facts with "a citation to evidence supporting each fact." N.D. Ind. L.R. 56-1(a). Thus, for purposes of deciding Mr. Betts's motion for summary judgment, the Court will only consider those facts that Mr. Betts supports with citations to record evidence.

Mr. Betts makes four distinct arguments in support of his motion for summary judgment: (1) Defendants violated his Fourth Amendment rights and engaged in reckless misconduct, (2) there was no legal basis for the towing of Mr. Betts's vehicles, (3) Mr. Betts's civil rights were violated when law enforcement officers threatened and harassed him, and (4) the false documentation of and lack of legitimate authority for the towing show malfeasance on the part of Defendants. All fail.

i.    *Fourth Amendment Violation*

Mr. Betts identifies three events to support his argument that Defendants violated his Fourth Amendment rights and engaged in reckless misconduct. First, Mr. Betts perfunctorily alleges without citing evidence that his Fourth Amendment rights were violated when Defendant Jason Konazeski, a supervising code enforcement officer employed by the City of Marion, (ECF 71 ¶ 15), falsely claimed to have spoken with "Judge Hunt" and received permission to tow Mr. Betts's vehicles, (ECF 61 at 2). Mr. Konazeski has submitted a declaration in support of Defendants' response to Mr. Betts's motion. In that declaration, Mr. Konazeski states that Marion City Attorney Tom Hunt is a former judge and still often referred to as "Judge Hunt" in Marion. (ECF 70-2 ¶ 13). The Court declines to credit Mr. Betts's conclusory allegation that Mr. Konazeski "deliberately" lied and thus violated Mr. Betts's Fourth Amendment rights, especially considering Defendants have produced evidence pointing to an alternative explanation for Mr. Konazeski's action. (ECF 61 at 2).

Second, Mr. Betts argues that Defendant Marion Police Officer Greg Melton, (ECF 71 ¶ 35), violated his Fourth Amendment rights by failing to verify "the legitimacy of the paperwork," (ECF 61 at 2). Though Mr. Betts does not elaborate, it appears from context that he is referring to the towing paperwork. Regardless, he cites no evidence for this conclusory allegation. Thus, the Court will not credit it.

Third, Mr. Betts alleges that Defendant Marion Police Captain Jeffrey Wells, (ECF 71 ¶ 40), threatened him with arrest without cause in violation of his Fourth

Amendment rights. Again, Mr. Betts does not point the Court to any evidence to support this. Once more, the Court declines to credit this unsubstantiated allegation.

ii.    *Legal Basis for Towing*

It is not clear which of Mr. Betts's claims he intends to support with his argument that there was no legal basis for the towing of his vehicles. In broad strokes, he argues that Indiana state law requires proper tagging of vehicles to be towed before their towing, and here his vehicles were not properly tagged before towing. This line of argument does not map on to Mr. Betts's Fourth Amendment, First Amendment, or Indiana constitutional claims. Instead, it seems to raise and support a new due process claim. As the Court explained above, Mr. Betts may not constructively amend his complaint with a due process claim at the summary judgment stage. To the degree this argument supports a due process claim absent from the amended complaint, it fails.

Mr. Betts directly refers to his Fourth Amendment claim once within this line of argument. He alleges that he observed Mr. Konazeski smoking at the back of Mr. Betts's property on August 15, 2023, two days before the towing occurred. (ECF 61 at 3). According to Mr. Betts, when he told Mr. Konazeski to stop smoking, Mr. Konaseski responded that "[a]ll I have to do is say I smell weed, and you'll go to jail." (*Id.*) Mr. Betts provides no evidence of this exchange and offers no argument tying it to his Fourth Amendment claim beyond a conclusory statement that this "abuse of authority" disregarded "the protections guaranteed by the Fourth Amendment." (*Id.*) But he does direct the Court to a clip of Marion Code Enforcement Officer Matthew Moore's body

camera footage from August 17, 2023, the day of the towing. In the clip, Mr. Moore appears to say, "I smell weed." (ECF 25 Moore Body Camera Video at 47:49). This clip, though, does not lend any real support to Mr. Betts's allegations. Mr. Moore seems to be making an observation, not "mocking[]" Mr. Betts to Mr. Konazeski as Mr. Betts alleges. (ECF 61 at 3). And the alleged threatening exchange between Mr. Konazeski and Mr. Betts on August 15, 2023, even if supported by evidence, does nothing to show that Mr. Konazeski or any other Defendant violated Mr. Betts's Fourth Amendment rights two days later when they towed his vehicles. This argument fails.

### iii.    Harassment and Threats in Violation of Civil Rights

Mr. Betts perfunctorily alleges that Defendants threatened him with arrest without probable cause or lawful justification. He concludes that these threats, combined with the towing, constitute a violation of his rights against unreasonable detention and confiscation. But he neither points the Court to any evidence in the record that supports these allegations, nor even summarizes the factual content of these allegations. Thus, this argument fails.

### iv.    Harassment and Threats in Violation of Civil Rights

Lastly, Mr. Betts argues that the false documentation of and lack of legitimate authority for the towing show malfeasance on the part of Defendants. In support, he generally alleges that Defendants misappropriated public funds acquired by the sale of abandoned vehicles. This allegation, even if supported by evidence, comes nowhere near the claims raised in Mr. Betts's amended complaint. This argument also fails.

Summary judgment is a high bar. To prevail, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Mr. Betts has fallen far short of that requirement. The Court declines to grant his motion.

### b.  Defendants' Motion for Summary Judgment

In their cross motion for summary judgment, Defendants seek summary judgment on each of Mr. Betts's claims. First, they argue that Mr. Betts's Fourth Amendment claims fail because he had no reasonable expectation of privacy at the site of the towing and the Abandoned Vehicles Act permitted towing of Mr. Betts's vehicles without a warrant. They also argue that any alleged threats of arrest during the towing were not Fourth Amendment violations as a matter of law. Second, they argue that Mr. Betts's First Amendment claim cannot succeed because Defendants had probable cause to tow Mr. Betts's vehicles and Mr. Betts did not identify any evidence that he was singled out for enforcement. Third, they argue that the independent Defendants are entitled to qualified immunity and Defendant City of Marion cannot be held liable under 42 U.S.C. § 1983 because Mr. Betts has not sufficiently alleged *Monell* liability. Fourth, they argue that Mr. Betts's state constitution claim fails because Indiana law does not provide a private right of action for state constitutional violations.[2] The Court is persuaded by Defendants' arguments on each of these fronts.

---

[2] Defendants argue that there is no due process claim in Mr. Betts's amended complaint. The Court agrees. Presumably out of an abundance of caution, Defendants nonetheless argue against possible due process claims Mr. Betts may have pressed. Because the Court did not identify any actual due process

i.    *Fourth Amendment Violation*

Defendants claim entitlement to judgment as a matter of law on Mr. Betts's

Fourth Amendment claims for three reasons: (1) their entry onto Mr. Betts's property

was not a Fourth Amendment violation, (2) their seizure of Mr. Betts's vehicles was not

a Fourth Amendment violation, and (3) Officer Melton's threat to arrest Mr. Betts if he

interfered with the seizure of the vehicles was not a Fourth Amendment violation.

First, they argue that their entry onto Mr. Betts's property was not a Fourth

Amendment violation because Mr. Betts had no reasonable expectation of privacy at the

location where the vehicles were towed. In support, they state that the parking spaces

outside Mr. Betts's home where the vehicles were located was open and easily viewable

from the street, and Mr. Betts made no effort to conceal the parking spaces from public

view. Thus, they conclude, Defendants did not need a warrant to enter and search the

property.

The critical question here is whether Mr. Betts's parking spaces constitute

curtilage. Curtilage, the "area immediately surrounding and associated with the home,

is entitled to the same Fourth Amendment protection as the home itself." *United States

v. Richmond*, 924 F.3d 404, 413 (7th Cir. 2019) (internal quotation omitted). To determine

whether an area qualifies as curtilage, and thus falls under the shield of the Fourth

Amendment proscription of warrantless search, courts consider "(1) the proximity of

the area in question to the home; (2) whether the area is included in an enclosure

---

claims in Mr. Betts's amended complaint, the Court does not address Defendants' arguments against
those possible claims.

surrounding the home; (3) how the owner uses the area; and (4) the measures taken to protect the area from observation." *Bleavins v. Bartels*, 422 F.3d 445, 451 (7th Cir. 2005) (internal citation omitted).

Here, the parking spaces bordered 615 South Adams, the property where Mr. Betts resided and operated an events center. (ECF 71 ¶ 21). But the area does not appear to be surrounded by any form of enclosure. (ECF 70-3 at 21–23; ECF 25 Crist & Moore Body Camera Video). Indeed, the fact that Mr. Betts operates an event center out of the property suggests that it is open to the public. (ECF 70-1 at 12:9–10). Nor does the record suggest that Mr. Betts took any special pains to shield the area from the public. Though Mr. Betts contends that he obscured the vehicles with tarp, (ECF 25 Crist & Moore Body Camera Video), it is the property that matters for purposes of curtilage. *See Richmond*, 924 F.3d at 413. Based on the undisputed facts, Mr. Betts's parking spaces were not curtilage, and thus Defendants' entry onto the property did not violate the Fourth Amendment.

Defendants next argue that their removal of the vehicles was not a Fourth Amendment violation because the vehicles were removed pursuant to Indiana's Abandoned Vehicles Act. In support, they allege that none of Mr. Betts's vehicles could be driven lawfully and therefore fell within the statutory definition of abandoned vehicle.

Warrantless seizure of a vehicle is not a Fourth Amendment violation when impoundment of the vehicles is authorized by statute. *See Hamilton v. City of New*

*Albany, Indiana*, 698 F. App'x 821, 825 (7th Cir. 2017); *Bell v. City of Chicago*, 835 F.3d 736, 740 (7th Cir. 2016). Indiana law permits the tagging and eventual removal of abandoned vehicles. Ind. Code §§ 9-22-1-1 *et seq.* An abandoned vehicle is one

> that is at least three (3) model years old, is mechanically inoperable, and is left on private property continuously in a location visible from public property for more than twenty (20) days. For purposes of this subdivision, a vehicle covered by a tarpaulin or other plastic, vinyl, rubber, cloth, or textile covering is considered to be visible.

Ind. Code § 9-13-2-1(7). The City of Marion has adopted an ordinance that incorporates these elements of Indiana law. (ECF 70-2 at 11). So Defendants' seizure of Mr. Betts's vehicles was not a Fourth Amendment violation if the towed vehicles met the definition of "abandoned."

Each of the towed vehicles was at least three model years old. (ECF 71 ¶¶ 22–25). And Defendants have put forward unrefuted evidence that each was visible for more than 20 days from public property. They have produced records showing the initial citation of three of the vehicles for mechanical inoperability at 615 South Adams on June 14, 2023, and an affidavit by Mr. Konzeski stating that the fourth vehicle was cited for inoperability as well. (ECF 70-2 ¶ 5; ECF 70-3 at 14–19). They have produced Google streetview images showing all four cars visible from a public location in July 2023. (ECF 70-3 at 21–23). And they have produced Abandoned/Impounded Vehicle Reports showing that all four vehicles were towed due to mechanical inoperability on August 17, 2023. (ECF 70-3 at 30–33). While this evidence does not show to an absolute degree of certainty that the vehicles were visible continuously from public property for more

14

than 20 days, Mr. Betts has neither denied nor produced evidence contradicting the continuous visibility of the vehicles. Lastly, Defendants have produced unrefuted evidence that the vehicles were mechanically inoperable. (ECF 70-3 at 14–19, 30–33). Though Mr. Betts seems to deny at points that the vehicles were all mechanically inoperable, conclusory statements are not enough to defeat summary judgment. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). Defendants' evidence shows that Mr. Betts's vehicles qualified as abandoned, and Mr. Betts has failed to put forward any contradicting evidence. Defendants therefore did not violate Mr. Betts's Fourth Amendment rights when they towed his vehicles pursuant to the Indiana Abandoned Vehicles Act.

Finally, Defendants argue that Officer Melton's statement that Betts would "absolutely" be arrested if he interfered with the towing of the vehicles was not a Fourth Amendment violation because Officer Melton did not actually arrest Mr. Betts. In support, they state that had Mr. Betts interfered with the towing, Officer Melton would have had probable cause to arrest him under Indiana law.

For a person to be seized within the meaning of the Fourth Amendment, the "totality of the circumstances" must be such that "a reasonable person in the situation would not feel free to leave." *Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023). The evidence does not suggest that Mr. Betts ever felt that he was not free to leave, and Mr. Betts makes no allegation to the contrary. Instead, it seems that Officer Melton informed Mr. Betts that he would be arrested if he interfered with the towing. (*See* ECF 25 Officer

15

Melton Body Camera Video at 00:42–1:07). Mr. Betts did not interfere with the towing and was not arrested. Therefore, he was not seized within the meaning of the Fourth Amendment.

Because Mr. Betts has failed to produce evidence that supports his Fourth Amendment claims, he has not created any genuine issues of material fact. Based on the undisputed facts, Defendants did not violate Mr. Betts's Fourth Amendment rights when they entered his property, seized his vehicles, and threatened to arrest him if he interfered with the seizure. Thus, Defendants are entitled to judgment as a matter of law on Mr. Betts's Fourth Amendment claims.

### ii. First Amendment Violation

Defendants seek summary judgment on Mr. Betts's First Amendment claim because Mr. Betts has offered no evidence that Mr. Konazeski was retaliating against him when he towed Mr. Betts's vehicles. In support, they state that Mr. Betts has produced no evidence that he made a complaint against Mr. Konazeski.

Government officials violate the First Amendment when they retaliate against individuals for protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). But to succeed on a retaliation claim, a plaintiff must show a "causal connection" between the protected speech and the injury. *Id.* Here, Mr. Betts has produced no evidence of the alleged complaint he made against Mr. Konazeski. Without any evidence to show that a complaint occurred, he cannot succeed on a First Amendment retaliation claim. Thus,

16

Defendants are entitled to judgment as a matter of law on Mr. Betts's First Amendment claim.

### iii.    *Qualified Immunity and* Monell *Liability*

Defendants also argue that summary judgment is appropriate because the individual defendants are entitled to qualified immunity and Mr. Betts has not established *Monell* liability against the City of Marion.

Under the doctrine of qualified immunity, government employees are not liable "for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once qualified immunity has been raised in affirmative defense, the burden rests on the plaintiff to show that it does not apply to the defendant. *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Qualified immunity is a broad shield, protecting "all but the plainly incompetent or those who knowingly violate the law" from civil liability. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Mr. Betts has made no argument that qualified immunity does not apply. As discussed above, he has not put forth any evidence creating a genuine issue of material fact as to his First or Fourth Amendment claims. Nor has he responded to Defendants' assertion of qualified immunity in their motion for summary judgment. Thus, the individual defendants are entitled to summary judgment on Mr. Betts's First and Fourth Amendment claims because they are qualifiedly immune from suit.

*Monell v. Department of Social Services* established that municipalities may be liable for deprivations of civil rights only when the official policy or practice of the municipality caused the deprivation. 436 U.S. 658, 694–95 (1978). Mr. Betts has not alleged that an official policy or practice of the City of Marion led to a constitutional deprivation. Therefore, the City of Marion is entitled to judgment as a matter of law because it may not be held liable under 42 U.S.C. § 1983.

        *iv.*    *State Law Claims*

Lastly, Defendants seek summary judgment on Mr. Betts's state-law claims because, unlike federal law, Indiana law establishes no private right of action under which Mr. Betts may sue for redress of state constitutional harms. As Defendants correctly note, Indiana "has no statutory provision comparable to 42 U.S.C. section 1983" that creates "an explicit civil remedy for constitutional violations by either individual officers or government entities." *Cantrell v. Morris*, 849 N.E. 2d 488, 493 (Ind. 2006). While this Court may exercise supplemental jurisdiction over state-law claims when they arise from the same case or controversy as valid federal claims, 28 U.S.C. § 1367, Mr. Betts's bare assertions of a violation of the Indiana constitution has not raised a valid claim under Indiana law. Thus, Defendants are entitled to summary judgment on this claim as well.

### IV.    MR. BETTS'S PETITION FOR CIVIL RIGHTS VIOLATION

On February 13, 2026, Mr. Betts filed a petition for damages for civil rights violation. (ECF 77). In this petition, Mr. Betts alleges that his Fourth Amendment rights

18

were violated by the City of Marion and Marion Police Officers Carter, McLung, Wert, and Cole. Defendants moved to strike Mr. Betts's petition, arguing that it is either an improper attempt to amend Mr. Betts's complaint or an attempt to begin a new case. (ECF 79).

At the outset of his petition, Mr. Betts explicitly states that he "already ha[s] an active federal lawsuit against the City of Marion, pertaining to other Fourth Amendment violations (*Cause No.: 1:23-cv-00408-CCB-SLC*)." (ECF 77 at 1). He then details the events of a traffic stop on August 20, 2025, that he argues constituted a violation of his civil rights. Based on this, it seems plain to the Court that Mr. Betts is attempting to file a new lawsuit. To accomplish this, Mr. Betts must file a new complaint under a new cause number. His petition is struck from the docket.

V.    CONCLUSION

For these reasons, Mr. Betts's motion for summary judgment (ECF 61; ECF 67) is **DENIED,** Defendants' motion for summary judgment (ECF 69) is **GRANTED.** Additionally, Defendants' motion to strike is **GRANTED** (ECF 79), and Mr. Betts's petition for damages for civil rights violation (ECF 77) is **STRUCK.** The Clerk is **DIRECTED** to close this case.

SO ORDERED on March 6, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT